IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NAZMUDIN and ROZHAN KESHWANI, § § | |
| Plaintiffs, § § | |
| VS. § | CIVIL ACTION NO. H-18-3797 |
| § | |
| AMERICAN BANKERS INSURANCE § | |
| COMPANY OF FLORIDA, § § | |
| Defendant. § | |

**MEMORANDUM AND OPINION GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This is a Harvey flood-insurance case. American Bankers Insurance Company of Florida issued Nazmudin and Rozhan Keshwani a "Write-Your-Own" Standard Flood Insurance Policy. After Hurricane Harvey damaged their home in August 2017, the Keshwanis sued American Bankers for breach of contract, alleging that American Bankers failed to pay for covered flood damage to the ground floor. The parties cross-moved for summary judgment on whether the Keshwanis' policy covered the flood damage to the ground floor. Based on the parties' pleadings, motions, and briefs, the summary judgment record, and the applicable law, the court grants American Bankers's motion for summary judgment and denies the Keshwanis' cross-motion for summary judgment. The Keshwanis' claim is dismissed, with prejudice, and final judgment is separately entered. The reasons for this ruling are explained below.

**I.      Background**

American Bankers issued a Standard Flood Insurance Policy effective August 2017 to August 2018, for the Keshwanis' home. (Docket Entry No. 23-1 at 6). The home is a post-FIRM building. (*Id.*). In English, this means that it was constructed or substantially improved after

December 31, 1974, or on or after the effective date of an initial Flood Insurance Rate Map. 44 C.F.R. pt. 61, app. A(1), art. II(B)(23) (2019). Although the home was originally built as an elevated structure, the Keshwanis enclosed and finished the ground-floor space below the second-floor living area. (Docket Entry No. 29-1 at 20). They assert that the enclosure of the ground floor places the flood damage in the policy's coverage. (Docket Entry No. 24 at 5–6). The property is located in FEMA-designated Flood Zone AE. (Docket Entry No. 23-1 at 6).

In August 2017, flooding from Hurricane Harvey damaged the property's enclosed, finished ground floor and second-floor living area. (Docket Entry No. 23-1 at 15–16). The Keshwanis claimed payment for the flood damage to both floors. (Docket Entry No. 23-1 at 101). After reviewing an independent adjuster's report, American Bankers paid $42,333.09 for the damage to the second-floor living area, but not to the ground floor. (*Id.*).

The Keshwanis sued, asserting a claim for breach of contract. (Docket Entry No. 1). American Bankers moved for summary judgment, arguing that the policy bars payment for damage to the ground floor because the property is an elevated, post-FIRM building located in Zone AE. (Docket Entry No. 23). The Keshwanis cross-moved for summary judgment, arguing that under FEMA regulations, their home is no longer an elevated building, and the damage to the ground floor is covered. (Docket Entry No. 24). American Bankers responded, the Keshwanis replied, and American Bankers filed a surreply. (Docket Entry Nos. 25, 29, 34). The parties jointly moved to stay the remaining pretrial deadlines pending a ruling on their cross-motions for summary judgment. (Docket Entry No. 35).

American Bankers submitted the following summary judgment evidence:

1. the declaration of J. Scott Lapine, a claims leader for National Flood Services, a third-party administrator for this and other Standard Flood Insurance Policies, (Docket Entry No. 23-1 at 2–4);

2. the declarations page of the Keshwanis' policy, (*id.* at 6);

3. the elevation certificate of the Keshwanis' property, including pre-flood photographs of the property, (*id.* at 8–13);

4. the closing report of Ryze Claim Solutions, an independent insurance-adjusting company, and a proof-of-loss form completed by Robert Massof of Ryze Claim Solutions on behalf of American Bankers, (*id.* at 15–99);

5. a letter from American Bankers to the Keshwanis, dated October 31, 2017, confirming delivery of the flood-claim payment and denying additional payment for the remaining damage, (*id.* at 101–06);

6. Harris County Appraisal District's Real Property Account Information for the Keshwanis' property from tax year 2020, (Docket Entry No. 23-2); and

7. an unsworn version of Louis G. Fey Jr.'s expert report and the "Lowest Floor Guide," a section of the *National Flood Insurance Program Flood Insurance Manual*, (Docket Entry No. 23-3).

The Keshwanis submitted:

1. a FEMA Fact Sheet, "Elevation Certificates: Who Needs Them and Why," (Docket Entry No. 24-2);

2. FEMA's *Financial Assistance/Subsidy Arrangement*, from October 1, 2016, and from October 1, 2019, (Docket Entry No. 24-3; Docket Entry No. 24-4);

3. an excerpt from section VIII of the *National Flood Insurance Program Adjuster Claims Manual*, (Docket Entry No. 24-5);

4. a FEMA Technical Bulletin, "Openings in Foundation Walls and Walls of Enclosures," (Docket Entry No. 24-6); and

5. the declaration of Louis G. Fey Jr., confirming and restating the contents of his expert report, (Docket Entry No. 29-1).

This record evidence is examined under the applicable legal standards.

## II. The Legal Standards

### A. Summary Judgment

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

*Shepherd on Behalf of Estate of Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.,* 709 F. App'x 287, 288 (5th Cir. 2018) (per curiam) (alteration omitted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters. Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). The moving party must demonstrate the absence of a genuine issue of material fact, but it need not negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.,* 864 F.3d 326, 335 (5th Cir. 2017) (per curiam). "If the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate "the precise manner in which" that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Forsyth v. Barr*,

4

19 F.3d 1527, 1537 (5th Cir. 1994)). "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotation omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor." *Waste Mgmt. of La., L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 972 (5th Cir. 2019) (alterations omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam)).

### B. The National Flood Insurance Act

The National Flood Insurance Act of 1968, 42 U.S.C. § 4001, established the National Flood Insurance Program "to make flood insurance available on reasonable terms and to reduce fiscal pressure on federal flood relief efforts." *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). The Program's Write-Your-Own policies allow private insurers to sell flood insurance that the federal government underwrites. *Id.* FEMA regulations specify the terms and conditions for these standard federal flood-insurance policies and how Write-Your-Own insurers are to adjust claims. *Id.* While private insurers sell Write-Your-Own policies to the purchasers, the federal treasury pays the claims. *Id.*

The National Flood Insurance Act, FEMA's flood-insurance regulations, and federal common law govern interpretation of the Standard Flood Insurance Policy. 44 C.F.R. pt. 61, app. A(1), art. IX; *Cohen v. Allstate Ins. Co.*, 924 F.3d 776, 780 (5th Cir. 2019). "[T]he reference to federal common law in the [Standard Flood Insurance Policy] directs courts to employ standard insurance principles when deciding coverage issues under the policy." *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 394 (5th Cir. 2007) (emphasis omitted). Under standard insurance principles, "if the language of a policy is clear and unambiguous, it should be accorded its natural meaning."

5

*Hanover Bldg. Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir. 1984) (quoting *Landress Auto Wrecking Co. v. U.S. Fid. & Guar. Co.*, 696 F.2d 1290, 1292 (11th Cir. 1983)). If the policy is ambiguous, the "insurance contract[] [is] to be reasonably construed consonant with the apparent objective and intent of the parties." *Hanover*, 748 F.2d at 1013 (quoting *Baltimore Bank & Tr. Co. v. U.S. Fid. & Guar. Co.*, 436 F.2d 743, 746 (8th Cir. 1971)). The court may consider individual policy provisions, the policy as a whole, and the parties' apparent objectives in entering the contractual relationship to determine the policy's reasonable construction. *Eagle Leasing Corp. v. Hartford Fire Ins. Co.*, 540 F.2d 1257, 1262 (5th Cir. 1976). If the meaning remains unclear, "[it] is generally construed in favor of the insured in order to promote the policy's objective of providing coverage." *Hanover*, 748 F.2d at 1013 (quoting *Eagle-Pitcher Indus., Inc. v. Liberty Mut. Ins. Co.*, 682 F.2d 12, 17 (1st Cir. 1982)).

Although private companies administer Write-Your-Own policies, disbursed payments are "a direct charge on the public treasury." *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 531–32 (5th Cir. 2015) (quoting *Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998)). To seek these public funds, a claimant must comply strictly with the payment terms and conditions Congress put in place, *Cohen*, 924 F.3d at 780, and the court must strictly construe and enforce policies issued under a federal program. *Gowland*, 143 F.3d at 954.

**III. Analysis**

American Bankers argues that the Standard Flood Insurance Policy terms limit coverage for elevated buildings that are: (1) constructed after the effective date of an initial Flood Insurance Rate Map; and (2) located in certain FEMA-designated flood zones. The parties agree that the Keshwanis' house is post-FIRM construction and located in FEMA-designated Flood Zone AE.

6

The Keshwanis dispute that their home is an "elevated building" under the Standard Flood Insurance Policy.

The policy provision at issue states, "[the insurer] insure[s] against direct physical loss by or from flood to . . . items of property in a building enclosure below the lowest elevated floor of an elevated post-FIRM building located in Zone[] . . . AE." 44 C.F.R. pt. 61, app. A(1), art. III(A)(8); (Docket Entry No. 23-1 at 101–03). The policy limits coverage to certain categories of building property, including air conditioners, drywall, circuit-breaker boxes, electrical outlets, furnaces, hot-water heaters, and nonflammable insulation. *Id.* The policy also limits coverage to certain categories of personal property, including air-conditioning units, washers, dryers, and freezers. 44 C.F.R. pt. 61, app. A(1), art. III(B)(3); (Docket Entry No. 23-1 at 103). Under American Bankers's interpretation, the Keshwanis' enclosed ground floor is an "enclosure below the lowest elevated floor" that is not covered except for the narrow categories listed in the policy.

The Keshwanis argue that their home is not an elevated building. Although their home was constructed as an elevated structure, the Keshwanis cite the expert report of Louis G. Fey, Jr. to argue that under FEMA standards and guidelines, the home is no longer elevated. Fey cites an excerpt from the *National Flood Insurance Program Adjuster Claims Manual* to argue that the FEMA definition of an elevated building requires space between the ground level and the lowest floor. (Docket Entry No. 29-1 at 14). The Keshwanis argue that their home is not elevated because the ground floor has one side on ground level. (Docket Entry No. 24 at 6).

The policy's declaration page supports the conclusion that the Keshwanis' home is an elevated building. The policy defines the "Declarations Page" as "[a] computer-generated summary of information [the insured] provided in the application for insurance" and states that "[t]he Declarations Page is a part of this flood insurance policy." 44 C.F.R. pt. 61, app. A(1), art.

7

II(B)(10). The declarations page states that American Bankers agreed to provide coverage for an "elevated" building. The declarations page describes the insured property as a building that is "Elevated with Enclosure" and reads "Elevated Building: Y." (Docket Entry No. 23-1 at 6). The declarations page also states that "[t]his is an elevated building" and that "coverage is limited below the lowest elevated floor." (*Id.*) The elevation certificate confirms that the second-floor living area is the lowest elevated floor and that the ground floor is subject to coverage limits. (*Id.* at 8–9). Construed strictly, the policy covers the Keshwanis' home only to the extent that it is an elevated building, subject to the limits imposed by the Standard Flood Insurance Policy.

Under the federal regulations, to be eligible for federal flood insurance, communities must require residential structures in zone AE to "have the lowest floor (including basement) elevated to or above the base flood level."[1] 44 C.F.R. § 60.3(c)(2) (2019). The Keshwanis' local flood ordinance imposes this requirement. *See* Hunter's Creek Village Code, § 10-124(b)(1).

Case law supports the conclusion that the Keshwanis' policy does not cover flood damage to their enclosed ground floor. In *Carneiro Da Cunha v. Standard Fire Insurance Co./Aetna Flood Insurance Program*, 129 F.3d 581, 585–86 (11th Cir. 1997), the court held that the enclosed ground floors of the plaintiffs' homes, which were below the required base-flood elevation prescribed by regulation, were not covered by federal flood insurance. The plaintiffs' post-FIRM houses were located in flood zone AE, but the ground floors were not elevated above the base-flood elevation. *Id.* The Eleventh Circuit affirmed the district court's conclusion that the floor higher than the ground should be considered the "lowest elevated floor," stating that "if the homes are truly 'non-elevated' then no federal insurance is available whatsoever." *Id.* at 586.

---

[1] A "base flood" is "[a] flood having a one percent chance of being equaled or exceeded in any given year." 44 C.F.R. pt. 61, app. A(1), art. II(B)(4).

8

The Keshwanis argue that the court should defer to FEMA guidelines on whether their home is "elevated." *See*, *e.g.*, *Spong v. Fid. Nat. Prop. & Cas. Ins. Co.*, 787 F.3d 296, 306 (5th Cir. 2015) (FEMA's informal interpretations are persuasive authority). Louis G. Fey's expert report relies on the *National Flood Insurance Program Adjuster Claims Manual* and a FEMA Technical Bulletin. The Keshwanis point out that these guidelines state that coverage restrictions do not apply to the lowest floors of nonelevated buildings, even if the ground floor is below base-flood elevation. (Docket Entry No. 24 at 9). But these manuals describe how to determine the initial policy rate. And while the Keshwanis correctly observe that "[r]atings, premiums, and coverage are all intertwined," (*id.* at 7), the initial-rate decision determines the premium for a specified amount of coverage. The policy's declarations page shows that their property was designated as elevated for both rating purposes and for determining coverage. (Docket Entry No. 23-1 at 6). This is consistent with American Bankers's interpretation that the policy covers the Keshwanis' house as an elevated structure.

The Keshwanis have not shown that enclosing the space between the lowest elevated floor and ground level changed their home from elevated to nonelevated. And although the Keshwanis argue that their home is not elevated because one side of the enclosed floor is on the ground level, the *National Flood Insurance Program Adjuster Claims Manual* warns homeowners that "[s]tructures that are misrated should be reported to the company's underwriting department as soon as possible after the potential error is discovered." (Docket Entry No. 24-5 at 2). The record does not indicate that the Keshwanis notified American Bankers's underwriting department that their policy had a ratings error.

The declarations page of the Keshwanis' policy, supplemented by the elevation certificate and the regulations requiring homes in the area to be elevated, show that their property was subject

9

to the Standard Flood Insurance Policy coverage limitations for damage below the lowest elevated floor. The flood damage to the Keshwanis' enclosed ground floor is not covered under their policy.

**IV.     Conclusion**

American Bankers's motion for summary judgment, (Docket Entry No. 23), is granted. The Keshwanis' cross-motion for summary judgment, (Docket Entry No. 24), is denied. The parties' joint motion to stay the remaining pretrial deadlines is denied as moot. (Docket Entry No. 35). The case is dismissed, with prejudice. Final judgment is entered by separate order.

SIGNED on June 10, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge